RENDERED:  APRIL 11, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0963-MR

OMEGA GEE                                          APPELLANT


                APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE PATRICIA MORRIS, JUDGE
                 ACTION NO. 20-CR-000983-001


COMMONWEALTH OF KENTUCKY                       APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, L. JONES, AND McNEILL, JUDGES.

EASTON, JUDGE:  The Appellant, Omega Gee ("Gee"), was convicted after a

jury trial of first-degree assault, first-degree robbery, fourth-degree assault, and

theft by unlawful taking.  Gee argues the circuit court erred by denying his *Batson*[1]

challenge to the Commonwealth's exercise of a peremptory strike of an African

---

[1] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

American[2] juror.  Gee also argues the circuit court erred by allowing the Commonwealth to introduce flight evidence.  Upon review, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

In late January 2020, Gee was living with his ex-girlfriend, Isla Sisic ("Sisic"), in Louisville.  They had supposedly ended their relationship months earlier but were continuing to live together.  Sisic had started to date Ammiel Rodgers ("Rodgers").  Sisic said she told Gee about her relationship with Rodgers in January, and she "felt like he took it pretty well and was cordial about it."  Yet Gee sent a text message to Sisic saying that he was going to "shoot the guy she was messing with."

On January 31, 2020, Rodgers came to visit Sisic, and they spent the night in a hotel.  After checking out the following morning, the pair went to Sisic's apartment.  Rodgers knocked on the door and momentarily interacted with Gee.  Someone slammed the door shut.  Sisic and Rodgers left.

Later that day, Sisic and Rodgers returned to the apartment to pack clothes and leave again.  While they were in the apartment, Gee returned to the apartment with his friend, Daniel Parham ("Parham").  Gee became angry with

---

[2] We will use this phrase because it was used in the Appellant's brief to describe the juror at issue.

Sisic and asked why Rodgers was at the apartment. Rodgers replied he and Sisic were getting a few things and leaving.

Parham testified Rodgers threatened to call people to beat up Gee and said he was not going to leave the apartment. Gee and Parham left. Sisic testified that, when Gee left, he said "by the time that I come back and you guys are still here, you're going to get what's coming to you." Despite this interaction, Sisic and Rodgers, who were drinking, fell asleep on her bed.

Sometime later, Gee returned to the apartment with his friend, Detrick Williams ("Williams"). They came into the bedroom where Sisic and Rodgers were. Gee and Williams grabbed Rodgers and carried him out to the kitchen where Parham, Ralu Hunter ("Hunter"), and Jaden Grant ("Grant") were waiting. Gee and Williams both pistol-whipped Rodgers, who fell to the floor. Sisic said Gee, Hunter, and Williams were punching Rodgers in the head and kicking him in the face, with Gee hitting him the most.

Sisic tried to get Gee to stop hitting Rodgers but could not. As she gathered her belongings, Gee jumped on her back, bit her, and took her keys. Sisic saw Williams's gun on the kitchen counter and tried to grab it. Williams punched Sisic in the face. Gee and the others then dragged Rodgers from the kitchen onto the front porch. Sisic tried to stop Gee by hitting him with a bottle, to which Gee responded by punching her twice in the face and pistol-whipping her. By the time

Gee and the others got Rodgers onto the front porch, Rodgers appeared to be dead, and his face was deformed.

Gee and the others left the apartment but then came back because Gee forgot his wallet. Sisic claims that, when Gee came back, Gee stole their cell phones and personal belongings, kicked Rodgers again, and punched Sisic in the face. Sisic apparently lost consciousness, and when she woke up, Gee was gone. Sisic dragged Rodgers to a nearby movie theatre where she was able to call 911.

Sisic assisted police with the investigation. A week later on February 6, police arrested Gee at an apartment complex in Lexington. The Jefferson County Grand Jury charged Gee, Grant, Hunter, Parham, and Williams with assaulting and robbing Rodgers and Sisic. Both Parham and Williams pled guilty to lesser charges and agreed to testify for the Commonwealth at Gee's trial. Hunter met with the Commonwealth and police, gave a statement, pled guilty to amended charges but did not testify at Gee's trial. Grant's case was severed, and he did not testify at trial.

During voir dire, Gee's counsel asked the jury panel: "Who here agrees that people could change their story, could lie for plea deals, anything like that?" The prospective juror in seat 25 ("Juror 25"), who was an African American male, replied: "to get away from what it is that they're not willing to face[.]" Defense counsel replied to Juror 25 that those who accept deals "get a break from

the possible consequences, okay." Juror 25 did not interject or correct counsel's statement.

The prospective juror in seat 15 ("Juror 15") was a white man. Juror 15 replied to defense counsel's question about those who accept plea deals that there can be an "incentive" for them to change their story. The prospective juror in seat 27 ("Juror 27"), another white man, had initial concerns that a co-defendant's credibility may be lessened for accepting a plea agreement. Juror 27 stated an individual would be more likely to change his or her story because "generally a plea deal gives you a break for testifying against someone else." To which defense counsel replied, "So they are changing their story for getting a break?" Juror 27 stated an individual could "possibly" change his story.

Because of the nature of the charges in the case, domestic violence was also an area of inquiry during voir dire. Gee's counsel asked the panel whether they had "any connection" with domestic violence or domestic violence victims. Juror 27 stated his niece's ex-boyfriend once made threats against her. Juror 15 stated he used to deal fairly extensively with domestic violence as a pastor in Chicago. Juror 25 was silent during the topic of domestic violence.

The Commonwealth used peremptory strikes against Juror 15 and 25, but not Juror 27. Defense counsel lodged a *Batson* challenge to the Commonwealth's exercise of a peremptory strike on Juror 25. The

Commonwealth's primary proffered race-neutral reason for striking Juror 25 was that he expressed bias against those who accept plea deals and that some of the Commonwealth's witnesses were Gee's accomplices who had accepted deals. The court denied Gee's *Batson* challenge.

Before trial, the Commonwealth filed a notice to admit evidence that Gee fled Louisville to Lexington after the assault. Gee objected on the grounds that he merely moved from Louisville to Lexington and was not evading arrest. The Commonwealth countered with a social media message from Gee to Parham in which Gee said he was in Lexington and that Parham should lie to the police if he got caught. Gee asked Parham to tell police he acted in self-defense. Parham agreed to this. The circuit court permitted the introduction of Gee's relocation to Lexington.

The jury convicted Gee of first-degree assault and theft by unlawful taking against Rodgers and fourth-degree assault and first-degree robbery against Sisic. Gee was sentenced to ten years to serve. This appeal follows. We will address the applicable standards of review in our analysis of the two issues presented.

## ANALYSIS

Gee first argues the circuit court erred when it denied his *Batson* challenge to the Commonwealth's peremptory strike of the African American Juror

25. "Challenging prospective jurors on the basis of race violates the Equal Protection Clause." *Washington v. Commonwealth*, 34 S.W.3d 376, 378-79 (Ky. 2000). In *Batson*, 476 U.S. 79, 106 S. Ct. 1712, the United States Supreme Court established that claims of racial discrimination in the usage of peremptory strikes are to be analyzed under a three-step process.

"First, the defendant must show a prima facie case of racial discrimination. If the trial court is satisfied with the defendant's showing, the burden shifts to the prosecutor to state race-neutral reasons for the peremptory strikes. The trial court must then determine whether the defendant has sufficiently proven purposeful discrimination." *Thomas v. Commonwealth*, 153 S.W.3d 772, 777 (Ky. 2004) (citing *Batson*, *supra*, at 93-98, 106 S. Ct. at 1722-24). The trial court's denial of a *Batson* challenge is reviewed under the clearly erroneous standard.

No prima facie showing was made in this case. This analysis is not just about numbers of jurors matching certain demographics, but the composition is part of the initial analysis. From our ability to view the jurors on the video, we see that the panel from whom the final jurors was selected appears to have contained several African Americans. We do not know if Juror 25 was the only African American struck by the Commonwealth because the record does not make this clear. The *Batson* challenge here might have ended at the prima facie stage.

But the Commonwealth did not raise this. Because the Commonwealth instead volunteered a justification for this one strike, the circuit court and this Court on review must evaluate the exercise of that strike. *Mash v. Commonwealth*, 376 S.W.3d 548, 555 (Ky. 2012).

Gee argues the Commonwealth's stated position for striking African American Juror 25 is a pretext considering it did not strike Juror 27 who was white. As previously mentioned, both of these prospective jurors at first expressed negativity regarding individuals who accept plea deals. But Juror 27 mitigated his position by saying one could "possibly" change his story for a plea deal. There was no such mitigation on the part of Juror 25. The Commonwealth also contends it kept Juror 27 due to his familial connection to a domestic violence victim, which also distinguished him from Juror 25.

Gee then argued Juror 15 had more experience with victims of domestic violence than Juror 27, suggesting that the Commonwealth should have also kept Juror 15 to be consistent. Similar to Juror 27, Juror 15 did not mitigate any position on plea deals as Juror 25 did. But just comparing the two white jurors does not really fit, unless Gee wants to argue the Commonwealth should have kept both Jurors 15 and 27 and struck the African American Juror 25 for having no familial or other connection to domestic abuse victims.

The circuit court must consider the totality of what each juror said. Juror 15 had a lot of experience with domestic violence claims, which the Commonwealth could reasonably see as potentially cutting both ways when the juror considered that issue. Juror 27 recalled only a female relative, a niece, as being threatened by a boyfriend. The Commonwealth could have seen that as more favorable to its arguments about this case, a single incident involving a female victim threatened by a boyfriend. By contrast, Juror 25 had no reported experience with domestic violence. Considering all the circumstances, the circuit court was not clearly erroneous in its decision to sustain the Commonwealth's peremptory strike of Juror 25. No *Batson* violation occurred.

Gee's next claim of error is that the Commonwealth should not have been allowed to characterize his travel to Lexington as evidence of flight. He asserts the balance of the evidence does not show that Gee went to Lexington to avoid arrest and prosecution. Gee claims he went to Lexington out of fear for his safety.

"The standard of review of an evidentiary ruling is abuse of discretion. The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. This Court will not disturb the trial court's decision to admit evidence absent an abuse

of discretion." *Anderson v. Commonwealth*, 231 S.W.3d 117, 119 (Ky. 2007) (internal quotation marks and citations omitted).

Under KRE[3] 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, such evidence may be admissible "[i]f offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." KRE 404(b)(1).

It is well established that proof of flight is admissible because "flight is always some evidence of a sense of guilt." *Rodriguez v. Commonwealth*, 107 S.W.3d 215, 218 (Ky. 2003) (quoting *Hord v. Commonwealth,* 13 S.W.2d 244, 246 (Ky. 1928)). "[E]vidence of flight is admissible because it has a tendency to make the existence of the defendant's guilt more probable: a guilty person probably would act like a guilty person." *Id.* at 219. This is an old common-law rule with an ancient basis: "The wicked flee when no one pursues, but the righteous are bold as a lion." Proverbs 28:1 (New International Version).

Gee attempts to portray himself as fearful of Rodgers and Sisic or perhaps their friends, and that was why he went to Lexington. It could seem incredulous to a juror that Gee would have reason to fear Rodgers and Sisic themselves at this point in light of their physical condition after the assault.

---

[3] Kentucky Rules of Evidence.

Rodgers was incapacitated in the hospital with a tracheostomy, feeding tube, permanent screws and metal plates in his face, and his jaw was wired shut.

Instead of expressing fear of anyone, Gee sent a social media message to Parham asking him to lie to the police. Gee asked Parham to tell police he acted in self-defense. The jury was free to believe or not believe that Gee fled to Lexington due in some part to a sense of guilt, but the circuit court did not abuse its discretion in admitting this evidence for the jury's consideration.

## CONCLUSION

The circuit court did not err in denying Gee's *Batson* challenge regarding African American Juror 25. The circuit court also was well within its discretion to admit evidence of flight. The judgment of the Jefferson Circuit Court is AFFIRMED.


ALL CONCUR.

BRIEFS FOR APPELLANT:

Joshua M. Reho
Louisville, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Sarah Benedict
Assistant Solicitor General
Frankfort, Kentucky